IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

THE STATE OF ARIZONA,
*Petitioner*,

*v.*

HON. JAMES E. MARNER, JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent Judge,*

DARREN IRVING GOLDIN,
*Real Party in Interest.*

No. CR-19-0315-PR
June 1, 2021

Appeal from the Superior Court in Pima County
No. CR20101551
The Honorable James E. Marner, Judge
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
2 CA-SA 2019-0042
Filed August 30, 2019
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, John Johnson, Division Chief Counsel, Nicholas Klingerman (argued), Section Chief Counsel, Tucson, Attorneys for State of Arizona

Pima County Legal Defender's Office, Anne Elsberry (argued), Assistant Legal Defender, Tucson, Attorneys for Darren Irving Goldin

Christopher D. Thomas, Karl J. Worsham (argued), Randal B. McDonald, Austin C. Yost, Perkins Coie LLP, Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, and MONTGOMERY joined.[*]

_____

JUSTICE BOLICK, Opinion of the Court:

¶1         Before us is an issue of first impression for this Court: whether an appearance of impropriety, arising from a prosecutor's actual misconduct, may be imputed to disqualify an entire prosecutor's office. We hold that, in the interests of fairness to the defendant and public confidence in the judicial system, a trial court has broad discretion to vicariously disqualify a prosecutor's office based on an appearance of impropriety.

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before the issuance of this opinion and did not take part in its drafting.

**BACKGROUND**

**¶2**   Darren Irving Goldin was indicted for first-degree murder in 2010. The Attorney General sought the death penalty.

**¶3**   In 2011, Goldin sought to disqualify the entire Tucson branch of the Attorney General's office based on ethical violations committed by Assistant Attorney General Richard Wintory. Wintory had engaged in a series of improper phone conversations with a court-appointed confidential intermediary, whose assignment was to identify mitigation evidence for defense counsel after locating and interviewing Goldin's biological mother. Wintory did not disclose this contact to defense counsel or the court for over a week, and then disclosed only the first conversation. Wintory was removed from the case (and subsequently left the Attorney General's office), and in 2014 he consented to a ninety-day suspension from the practice of law in Arizona for violating E.R. 8.4.[1] Subsequently, Wintory was suspended from the practice of law in Oklahoma for two years in an opinion that detailed his misconduct in Goldin's case. *See generally State ex rel. Okla. Bar Ass'n v. Wintory*, 350 P.3d 131 (Okla. 2015).

**¶4**   Goldin eventually accepted a plea agreement, which mooted the disqualification motion. However, the plea was revoked, and charges were reinstated after Goldin prevailed on a claim of ineffective assistance of counsel in 2016. The Attorney General also withdrew the death penalty as a sentencing option.

**¶5**   Upon return to superior court, Goldin renewed his effort to disqualify the Tucson office. In September 2019, following a hearing, the court granted the motion to disqualify the Tucson office. Although at least one other employee was involved in some of the phone calls, the court emphasized that it found no improper conduct by anyone other than Wintory. But it was impossible to know the content of the improper conversations or whether they tainted the prosecution in any way. As the trial court concluded, "I'm sure there's a more eloquent way of putting this,

---

[1] Ariz. R. Sup. Ct. 42, Ethical Rule ("E.R.") 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

but it just looks bad." Based on the appearance of impropriety and the importance of Goldin's constitutional right to counsel, the court determined that the Tucson office should be vicariously disqualified.

¶6 The court of appeals accepted special action jurisdiction and granted relief. It overturned the superior court's disqualification order because it failed to consider the factors for vicarious disqualification set forth in *Gomez v. Superior Court*, 149 Ariz. 223, 226 (1986), and remanded for consideration of those factors. *State v. Goldin*, No. 2 CA-SA 2019-0042, 3 ¶¶ 4, 6 (Ariz. App. Aug. 30, 2019) (dec. order).

¶7 We granted review because the question of vicarious disqualification of a prosecutor's office is of statewide importance and likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

¶8 "We review a trial court's decision on the disqualification of counsel for abuse of discretion." *State v. Tucker*, 205 Ariz. 157, 162 ¶ 23 (2003) (citation omitted). We review conclusions of law de novo. *State v. Newell*, 212 Ariz. 389, 397 ¶ 27 (2006) (citation omitted).

¶9 No previous decisions have addressed the issue before us, nor have we applied *Gomez* beyond the actual conflict-of-interest or misconduct contexts. In *Gomez* and the case on which it is based, *Alexander v. Superior Court*, 141 Ariz. 157 (1984), we considered the standards by which the state could disqualify defense counsel for a conflict of interest. The decision in *Alexander* was predicated on then-applicable Canon 9 of the American Bar Association's Model Code of Professional Responsibility ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"). 141 Ariz. at 161. The Court noted that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Id.* The Court instructed:

> [W]hen considering a motion for disqualification based upon the appearance of impropriety, [the trial court] should consider the following: (1) whether the

4

> motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Id.* at 165.

**¶10**   In the two years between *Alexander* and *Gomez*, new Model Rules of Professional Conduct were issued that omitted Canon 9. Still, the Court held that appearance of impropriety "survives as a part of conflict of interest." *Gomez*, 149 Ariz. at 225. The Court reiterated the four factors as "matters a court must consider when ruling upon a motion to disqualify opposing counsel." *Id.* at 226.

**¶11**   The State argues that the *Gomez* factors are inapplicable here and that a defendant should be able to disqualify an entire prosecutor's office only by showing that a fair trial cannot otherwise occur. We disagree. "Justice and the law must rest upon the complete confidence of the thinking public and to do so they must avoid even the appearance of impropriety." *State v. Latigue*, 108 Ariz. 521, 523 (1972). In particular, "criminal prosecutions must appear fair, as well as actually be fair." *Turbin v. Superior Court*, 165 Ariz. 195, 199 (App. 1990). Thus, the trial court should consider these factors whenever a defendant seeks to disqualify an entire prosecutor's office, regardless of whether the basis for the motion is a conflict of interest, misconduct, or appearance of impropriety.

**¶12**   As the trial court has the greatest familiarity with the facts and visibility of a case before it, it is in the best position to determine whether an appearance of impropriety is sufficient to undermine public confidence and whether disqualification is appropriate under the circumstances. The *Gomez* factors are useful in determining whether an appearance of impropriety is sufficiently weighty to justify disqualification, and we encourage trial courts to make the determination based expressly on those

factors. Although the trial court here did not invoke *Gomez* nor discretely assess each factor, which was the basis for the court of appeals' remand, *Goldin*, No. 2 CA-SA 2019-0042, at 3 ¶ 4, it implicitly considered them and did not abuse its discretion by granting the disqualification motion under the facts presented.

¶13 As the court of appeals correctly noted, the appearance of impropriety here emanated from actual misconduct. *Id.* The misconduct was so significant that it resulted in severe discipline. However, it was impossible to determine the substance of the improper conversations between Wintory and the confidential intermediary, or the extent to which the information was disclosed to others in the office or to which it informed prosecution strategy. Thus, the appearance of impropriety was grounded not in a mere perception of wrongdoing but an actual finding of misconduct with no ability to determine the scope of its impact.

¶14 Had the trial court applied the *Gomez* factors, it reasonably could have supported its conclusion that the Tucson office should be disqualified. Applying the first *Gomez* factor, whether the disqualification motion was made for purposes of "harassing the defendant,"[2] 149 Ariz. at 226, the State argues that Goldin brought the disqualification motion to delay the proceedings. The State notes that Goldin accepted a plea agreement despite the alleged appearance of impropriety and failed to raise the issue in post-conviction review proceedings. But the trial court could reasonably have concluded that, given Goldin's past efforts to disqualify the Tucson office, the renewed motion was not brought for harassment purposes.

¶15 In terms of possible harm to the party making the motion if it is not granted, *id.*—the second *Gomez* factor—the trial court noted that the Tucson office's prosecution of the case implicated Goldin's right to counsel. The unknown extent to which Wintory's misconduct affected the overall

---

[2] We reiterate that both *Gomez* and *Alexander* involved attempts by the state to disqualify defense counsel, which raise special concerns that do not apply to disqualification of a prosecutor's office. *See, e.g.*, *Gomez*, 149 Ariz. at 226 ("[W]e note that there can be public suspicion regarding an attempt by the state to disqualify a defendant's attorney.").

prosecution also undermines confidence in a fair prosecution. In *Burch & Cracchiolo, P.A. v. Myers*, the court considered a disqualification motion based on counsel's intentional use of confidential materials that were inadvertently disclosed to him. 237 Ariz. 369, 371–72 ¶ 1 (App. 2015). In such circumstances, the court reasoned that "instead of focusing upon actual prejudice, which is difficult to quantify," the trial court should "consider whether prejudice *may* occur." *Id.* at 377 ¶ 30. Here, the trial court could reasonably have concluded that the prosecution's deliberate acquisition and concealment of confidential information could prejudice the defendant's subsequent prosecution, as we cannot know the extent to which the improperly obtained knowledge remained part of the prosecution.

¶16 The third factor, whether alternative adequate solutions existed or if disqualification is the least damaging solution under the circumstances, *Gomez*, 149 Ariz. at 226, is the closest here. Wintory left the case and then the office. The case is now removed in time from the precipitating incidents. But because the misconduct occurred over a period of time, and we do not know which other staff members in the Tucson office, if any, were privy to the improperly obtained information, it was within the trial court's discretion to disqualify the entire office. *See Rodriguez v. State*, 129 Ariz. 67, 73–74 (1981) (holding that possible disclosure of confidential information is a basis to impute disqualification).

¶17 The final factor, whether "the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation," *Gomez*, 149 Ariz. at 226, is especially pertinent where the defendant is seeking to disqualify a prosecutor or an entire office. *See, e.g.*, *Latigue*, 108 Ariz. at 523 (observing that, in a criminal prosecution, "even the appearance of unfairness cannot be permitted"). As the Florida Court of Appeals has observed, "[H]ow much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process." *Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp.*, 483 So. 2d 505, 506 (Fla. Dist. Ct. App. 1986). We will not ordinarily second-guess a trial court's determination regarding public

perception of a fair trial in deciding whether to disqualify a prosecutor's office.

**¶18**        Although the trial court should have analyzed each of the *Gomez* factors to give the appellate courts a better indication of its reasoning, its failure to do so under these circumstances is not alone a ground for reversal, and we will defer to its judgment in determining that disqualification was appropriate. Here, where actual misconduct may have tainted the proceeding, the trial court did not abuse its discretion in disqualifying the Tucson office.

## CONCLUSION

**¶19**        For the foregoing reasons, we vacate the court of appeals' opinion and affirm the trial court's ruling.