IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Petitioner*,

*v.*

MICHAEL MARTIN CREEL,
*Respondent.*

No. 2 CA-SA 2025-0077
Filed December 22, 2025

---

Special Action Proceeding
Pima County Cause No. CR20244460001
The Honorable Christopher C. Browning, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

---

COUNSEL

Laura Conover, Pima County Attorney
By J. William Brammer Jr., James W. Rappaport, and Rachel Stiles, Tucson
*Counsel for Petitioner*

Law Offices of Lawrence Y. Gee PLLC, Tucson
By Lawrence Y. Gee

and

Resnick Law Group PLLC, Tucson
By Mark R. Resnick
*Counsel for Respondent*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Gard and Judge Kelly concurred.

V Á S Q U E Z, Presiding Judge:

**¶1**    In this special-action proceeding, the State of Arizona seeks relief from the superior court's order granting Michael Creel's motion to vicariously disqualify the Pima County Attorney's Office (PCAO) from continued representation in the criminal prosecution against him. The state argues the court abused its discretion in disqualifying PCAO based solely on the appearance of impropriety—the fourth factor under *Gomez v. Superior Court*, 149 Ariz. 223 (1986). Because challenges to vicarious disqualification orders are properly challenged by special-action proceedings, we grant special-action jurisdiction. And, because we agree that vicarious disqualification is improper on this record, we grant relief.

**Factual and Procedural Background**

**¶2**    In 2024, a grand jury indicted Creel for second-degree murder, aggravated driving under the influence of an intoxicant with a suspended driver license, and felony criminal damage following a November 2024 vehicular accident that led to the death of John McLean. McLean had lost his bid for election to the Arizona State Senate the previous week and conceded his loss the night before the accident.

**¶3**    In June 2025, Creel filed a motion to vicariously disqualify PCAO from prosecuting the case. He contended that PCAO's continued involvement created an appearance of impropriety because McLean had contributed $700 to the reelection campaign of Pima County Attorney Laura Conover; McLean and Conover had appeared on the same political ticket; and McLean and Conover had publicly supported one another during their recent political campaigns. He argued these circumstances created an appearance that Conover—and by extension PCAO—would harbor a heightened sympathy for McLean as a victim. He also argued that PCAO would prosecute Creel's case more harshly than other similarly situated defendants.

**¶4**    After hearing oral argument, the superior court ordered PCAO disqualified from the case because the relationship between Conover and McLean produced a "very clear and very pronounced appearance of

impropriety." The court concluded that the following facts "reek[ed] of, at minimum, appearance of impropriety": (1) Conover and McLean had appeared on the same ballot; (2) they had "appeared at various campaign events together"; (3) they had endorsed one another and "said kind, complimentary things about one another"; (4) McLean had made three contributions totaling $700 to Conover's campaign; and (5) Conover and McLean were both members of the Democratic Party. It further reasoned that, as head of PCAO, Conover could not screen herself from the prosecution sufficiently to satisfy a reasonable perception that the prosecution appeared fair. This petition for special action followed.

## Special-Action Jurisdiction

**¶5**        We routinely handle challenges to orders concerning vicarious disqualification by special-action review. *See, e.g.*, *State v. Marner*, 251 Ariz. 198, ¶ 6 (2021); *Turbin v. Superior Court*, 165 Ariz. 195, 196 (App. 1990); *State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 225 (App. 1995); *see also* Ariz. R. P. Spec. Act. 12(a) ("Whether to accept jurisdiction of an appellate special action is within the court's discretion . . . ."). Special-action jurisdiction is appropriate when, as here, "the remedy by appeal is not equally plain, speedy, and adequate." Ariz. R. P. Spec. Act. 2(b)(2). Therefore, we accept special-action jurisdiction.

## Discussion

**¶6**        The state argues the record does not support the superior court's finding of a "very clear and very pronounced appearance of impropriety." We review the decision on a motion for vicarious disqualification for abuse of discretion. *See State v. Chambers*, 255 Ariz. 464, ¶ 13 (2023). The superior court "has the greatest familiarity with the facts and visibility of a case before it," and thus we "will not ordinarily second-guess . . . [its] determination regarding public perception of a fair trial in deciding whether to disqualify a prosecutor's office." *Marner*, 251 Ariz. 198, ¶¶ 12, 17. But, as the party seeking disqualification, Creel has the burden to establish the grounds for disqualification. *See Romley*, 184 Ariz. at 228. To sustain this burden, Creel must provide "sufficient reason[s]" why disqualification is warranted. *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, ¶ 24 (App. 2004) (quoting *Alexander v. Superior Court*, 141 Ariz. 157, 161 (1984)).

**¶7**        Courts apply *Gomez*'s four-factor test when considering whether to disqualify an entire prosecutor's office, including when, as here, the basis for the motion is the appearance of impropriety. *Chambers*, 255 Ariz. 464, ¶ 16. These factors are:

> (1) whether the motion is being made for the purposes of harassing the defendant, (2) whether the party bringing the motion will be damaged in some way if the motion is not granted, (3) whether there are any alternative solutions, or is the proposed solution the least damaging possible under the circumstances, and (4) whether the possibility of public suspicion will outweigh any benefits that might accrue due to continued representation.

*Gomez*, 149 Ariz. at 226 (quoting *Alexander*, 141 Ariz. at 165). Although no single factor is dispositive, we "view with suspicion motions by opposing counsel to disqualify a party's attorney based upon conflict of interest or appearance of impropriety." *Id.* A defendant may interfere with the attorney-client relationship of his opponent only in "extreme circumstances." *State ex rel. Mitchell v. Palmer*, 257 Ariz. 187, ¶ 12 (2024) (quoting *Alexander*, 141 Ariz. at 161).

¶8 Creel has not carried his burden of demonstrating that such "extreme circumstances" exist here. *See id.* The superior court disqualified PCAO based solely on its determination that Creel had satisfied the fourth *Gomez* factor—that the possibility of public suspicion outweighed any benefit to PCAO's continued representation. But—even assuming Creel had provided sufficient evidence to support his allegations regarding Conover and McLean's relationship—we disagree that a "very clear and very pronounced appearance of impropriety" arises from these facts. As the state points out, if political alliance alone could disqualify an elected county attorney from representing a party, PCAO would potentially be subject to disqualification any time it represents elected officials of the same party as the county attorney who appeared on the same ballot, despite the fact that PCAO routinely represents various elected officials and the civil agencies they represent. *See, e.g.*, A.R.S. § 11-532 (county attorney tasked with, among other duties, advising county board of supervisors, representing school districts and school district governing board members, and defending property tax appeals brought against county tax assessor pursuant to A.R.S. § 42-16208).

¶9 And, absent extraordinary circumstances not present here, moderate campaign contributions such as McLean's cannot form the basis for the type of "extreme circumstances" contemplated by our vicarious disqualification jurisprudence. *Mitchell*, 257 Ariz. 187, ¶ 12 (quoting *Alexander*, 141 Ariz. at 161). To hold otherwise would open the door to routine disqualification of county attorneys and their offices based solely

on party affiliation or campaign contributions, a result that could seriously disrupt the functioning and efficiency of PCAO and other county attorney offices. In so concluding, we note that our supreme court has found no conflict existed and no public suspicion was implicated in a situation where a county attorney's connections with the defendant seeking disqualification were far greater. *See Chambers*, 255 Ariz. 464, ¶¶ 27, 30 (county attorney's prior representation of defendant did not present conflict or raise public suspicion because, among other reasons, prior matters not substantially related to current criminal prosecution).

¶10 Further, although the superior court made no express findings as to the *Gomez* factors, Creel has not demonstrated that the remaining factors weigh in his favor. *See id.* ¶ 17 (appellate court may independently consider *Gomez* factors when superior court does not expressly do so); *see also Marner*, 251 Ariz. 198, ¶ 12 (encouraging superior courts to "make the determination based expressly on [*Gomez*] factors"). The first factor, whether the motion is being made for the purpose of harassment, is not at issue here. The second *Gomez* factor asks whether the party bringing the motion to disqualify is likely to suffer prejudice if the motion is not granted. *See Marner*, 251 Ariz. 198, ¶ 15. In response to the state's petition for special-action review, Creel contends he will face "substantial potential damage," citing trial delays resulting from this special-action proceeding and a more generalized potential damage to public confidence due to the perception of bias raised by PCAO's continued prosecution. But reinstating PCAO as the prosecuting agency will not inherently lead to further delay in the trial proceedings. To the contrary, PCAO's continued representation will avoid delays that would occur if the prosecution were transferred to another agency unfamiliar with the facts of the case. And damage to public confidence is not a relevant consideration under the second *Gomez* factor — which is concerned with personal harm to the defendant — and instead is properly addressed under the fourth factor. *See Chambers*, 255 Ariz. 464, ¶¶ 19, 22 (second factor concerns damage to party seeking disqualification).[1]

¶11 As to the third *Gomez* factor, whether viable alternative solutions exist to vicarious disqualification, "disqualifying an entire prosecutor's office is a drastic remedy that should be undertaken only where no lesser alternative would cure the problem." *Chambers*, 255 Ariz. 464, ¶ 29; *see also Marner*, 251 Ariz. 198, ¶ 16. Even assuming, for the sake

---

[1]Creel has not renewed his contention that he received an unfavorable plea bargain resulting from Conover's involvement with the case. We therefore do not address it.

of argument, that Conover's direct involvement with Creel's prosecution had an appearance of impropriety, adequate alternatives to PCAO's vicarious disqualification exist here. *See Chambers*, 255 Ariz. 464, ¶ 29 (declining to analyze third *Gomez* factor because defendant failed to establish "a problem in need of an 'alternate solution'"). Our rules of professional conduct expressly contemplate that a governmental officer's conflict is not necessarily imputed to the entire governmental agency. *See* Ariz. R. Sup. Ct. 42, ER 1.11(c); *see also Romley*, 184 Ariz. at 228 ("In most cases an effective screening mechanism will satisfy the defendant's interests and permit implementation of the policy change underlying ER 1.11(c)."). Although on occasion a conflict may rise to the magnitude that effective screening is impossible, *see, e.g.*, *Hamlet v. State*, No. 2 CA-SA 2025-0062, ¶¶ 20-22, 2025 WL 3522409 (Ariz. App. Dec. 9, 2025), Creel has not demonstrated that such circumstances exist here. *See Mitchell*, 257 Ariz. 187, ¶ 28 (disqualification motions require fact-intensive inquiries). For example, Creel has not provided any support, such as an affidavit or testimony, that Conover was directly involved with the prosecution. He has not challenged PCAO's apparent agreement to screen Conover from future involvement with his case. And he has not argued, here or to the superior court, that Conover cannot be meaningfully screened under the circumstances. Thus, the third *Gomez* factor weighs against disqualification.

¶**12**      In sum, the superior court's finding that PCAO's continued involvement in Creel's prosecution presents a clear and pronounced appearance of impropriety is not supported by the record. Creel has not shown that he is likely to be damaged by PCAO continuing to represent the state in his criminal prosecution, and the remote possibility of public suspicion raised here can be adequately remedied by screening Conover from the case, as contemplated by ER 1.11. *See Chambers*, 255 Ariz. 464, ¶ 31.

## Disposition

¶**13**      For the foregoing reasons, we accept special-action jurisdiction, vacate the superior court's order disqualifying PCAO, and reinstate PCAO as the prosecuting agency. We remand to the superior court for further proceedings.