STARING, Presiding Judge:
¶ 1 Michael Kellywood appeals from his convictions and sentences for three counts of sexual conduct with a minor under the age of fifteen, and one count each of molestation of a child, continuous sexual abuse of a child, and sexual abuse of a minor under the age of fifteen, all dangerous crimes against children. Kellywood argues the trial court erred by denying his motion to compel production of the victim's medical and counseling records for in camera review because they possibly contained exculpatory evidence. For the reasons that follow, we affirm Kellywood's convictions and sentences.
Factual and Procedural History
¶ 2 We view the facts in the light most favorable to upholding the jury's verdicts. State v. Buccheri-Bianca , 233 Ariz. 324, ¶ 38, 312 P.3d 123 (App. 2013). Beginning in 2012, Kellywood and his wife became foster parents to five siblings, whom they eventually adopted, including A.K. From 2012 to 2015, while A.K. was between eleven and fourteen years old, Kellywood sexually molested and assaulted her, for which he was eventually charged with multiple sexual offenses against her.
¶ 3 According to Kellywood's theory of defense, A.K. had recently fabricated her allegations, in part because he and his wife had taken away her cell phone after they discovered she had been using it to watch pornography. To support this theory, Kellywood filed a pretrial motion to compel the state to produce A.K.'s medical, Department of Child Safety (DCS), school, and counseling records, as well as her social media entries, computer searches, and text messages. Although Kellywood cited numerous legal authorities in his motion, he failed to develop any specific argument concerning his entitlement to production, merely asserting that, "All of the above records are necessary to defend Mr. Kellywood." Kellywood later withdrew the motion, and in a subsequent motion to compel production by the state, sought A.K.'s medical and counseling records for the period of time that she lived in his home. In that motion, he asserted: "[D]efense counsel needs possible exculpatory evidence which may be in the records of [A.K.'s] medical professionals and counselors. Oftentimes, these professionals directly ask questions concerning whether or not someone has been sexually inappropriate with them." The court denied the motion.[1]
*1207 ¶ 4 Following trial, the jury found Kellywood guilty as described above,[2] and the trial court sentenced him to life imprisonment, in addition to a combination of consecutive and concurrent prison terms totaling sixty years. The court also suspended imposition of his sentence for sexual abuse of a minor under fifteen, placing him on lifetime probation. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 13-4031 and 13-4033(A)(1).
Motion to Compel
¶ 5 Kellywood argues the trial court erred by denying his motion to compel production of A.K.'s medical and counseling records. He asserts the presence of "sufficient indicia" that those records might contain statements with which he could impeach A.K. Specifically, as noted, he maintains the medical and counseling records might show that when directly asked, A.K. affirmatively denied experiencing inappropriate sexual contact during the relevant period of time. "A trial court has broad discretion over discovery matters, and we will not disturb its rulings on those matters absent an abuse of that discretion." State v. Fields , 196 Ariz. 580, ¶ 4, 2 P.3d 670 (App. 1999). An error of law is an abuse of discretion. State v. Burgett , 226 Ariz. 85, ¶ 1, 244 P.3d 89 (App. 2010).
¶ 6 The trial court denied Kellywood's motion to compel "for various reasons, including [it]s concern that [the] circumstances of this kind of case [do] not mean that any negative responses to alleged providers [about inappropriate sexual contact] would necessarily be exculpatory." To the extent that this reflects a conclusion by the court that, as a matter of law, prior statements in which A.K. had denied experiencing inappropriate sexual contact could not possibly be exculpatory, we disagree. See Exculpatory Evidence , Black's Law Dictionary (10th ed. 2014) ("exculpatory evidence" is "[e]vidence tending to establish a criminal defendant's innocence"). It is possible that A.K., or any other similarly situated victim, could say something exculpatory to a care provider. However, as discussed herein, the mere possibility A.K. could have said something exculpatory is not, as a matter of law, sufficient by itself to require her to produce the medical and counseling records sought by Kellywood.
Victims' Rights
¶ 7 Under Arizona's Victims' Bill of Rights, a crime victim possesses a constitutional right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1 (A)(5); see also Ariz. R. Crim. P. 39(b)(12) (crime victim entitled "to refuse [a] ... discovery request by the defendant[ or] the defendant's attorney"). Thus, "[g]enerally, the victim of a crime has the right to refuse to hand over medical records...." State v. Sarullo , 219 Ariz. 431, ¶ 20, 199 P.3d 686 (App. 2008) ; see also State ex rel. Romley v. Superior Court (Roper) , 172 Ariz. 232, 237, 836 P.2d 445 (App. 1992) (§ 2.1(A)(5) encompasses medical records). In addition, "pursuant to the physician-patient privilege, a defendant may not seek to establish a victim's character trait through the testimony of the victim's doctor, or psychologist, or by using the victim's medical records without the victim's consent." State v. Connor , 215 Ariz. 553, ¶ 18, 161 P.3d 596 (App. 2007) ; A.R.S. § 13-4062(4) (physician-patient privilege); A.R.S. § 32-2085(A) (psychologist-patient privilege).
¶ 8 A victim's right to refuse discovery is not absolute, however. Sarullo , 219 Ariz. 431, ¶ 20, 199 P.3d 686. "Due process requires that the defendant receive 'a meaningful opportunity to present a complete defense.' " Connor , 215 Ariz. 553, ¶ 12, 161 P.3d 596 (quoting Holmes v. South Carolina , 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) ). And, "when the defendant's constitutional right to due process conflicts with the Victim's Bill of Rights in a direct manner ... then due process is the superior right." Roper , 172 Ariz. at 236, 836 P.2d at 449 (excluding "essential evidence, thereby precluding a defendant from presenting a theory of defense ... results in a denial of ... due process that is not harmless"). Thus, a victim *1208 may be compelled to produce treatment records for in camera inspection if the defendant shows a "reasonable possibility that the information sought ... include[s] information to which [he or] she [is] entitled as a matter of due process." Sarullo , 219 Ariz. 431, ¶ 20, 199 P.3d 686 (quoting Connor , 215 Ariz. 553, ¶ 10, 161 P.3d 596 ) (alteration in Sarullo ).
¶ 9 We therefore turn to the question of whether Kellywood demonstrated a "reasonable possibility" that the medical and counseling records he sought would contain evidence to which he was entitled as a matter of due process. Id. ¶ 20. In light of the competing constitutional interests, as well as the ordinarily privileged nature of patient-provider communications, we conclude the burden of demonstrating a "reasonable possibility" is not insubstantial, and necessarily requires more than conclusory assertions or speculation on the part of the requesting party. See Fields , 196 Ariz. 580, ¶ 7, 2 P.3d 670 (discovery request anchored in speculation when motivated only by "conclusions, surmise, and conjecture"); see also State v. Hatton , 116 Ariz. 142, 150, 568 P.2d 1040 (1977) ("[M]ere conjecture without more that certain information might be useful as exculpatory evidence is not sufficient to reverse a trial court's denial of a request for disclosure.").
¶ 10 Here, Kellywood has not demonstrated a reasonable possibility that the medical and counseling records he seeks contain exculpatory information. As noted above, in his motion to compel, he merely asserted: "[D]efense counsel needs possible exculpatory evidence which may be in the records of [A.K.'s] medical professionals and counselors. Oftentimes, these professionals directly ask questions concerning whether or not someone has been sexually inappropriate with them." However, neither in this court nor in the trial court, has Kellywood ever identified a medical treatment provider or counselor that saw A.K., or for that matter any specific condition for which A.K., his daughter, was receiving treatment or counseling. Moreover, there is no evidence in the record concerning the standard of care applicable to when and under what circumstances physicians and counselors should inquire about whether someone has suffered sexual abuse, or whether and how such inquiries are routinely made. Kellywood's assertions amount to nothing more than speculation that there might be something in records somewhere. He thus fails to demonstrate the "reasonable possibility" contemplated in Sarullo . 219 Ariz. 431, ¶ 20, 199 P.3d 686 ; see also Connor , 215 Ariz. 553, ¶ 11, 161 P.3d 596 ("Defendant presented no sufficiently specific basis to require that the victim provide medical records to the trial court for an in camera review."). Indeed, were we to conclude that Kellywood had demonstrated a "reasonable possibility" on the basis of such speculation, the effect would be to compel production of medical and counseling records in virtually any case in which a defendant accused of sexual offenses claims fabrication; the exception would swallow § 2.1(A)(5) of the Victims' Bill of Rights.[3]
¶ 11 Further, neither Roper nor Connor supports the view that the Victims' Bill of Rights must give way in every case in which a defendant merely articulates some plausible reason why treatment records might contain something exculpatory. In Roper , the state charged the defendant with aggravated assault against her husband. 172 Ariz. at 234, 836 P.2d 445. Asserting she had acted in self-defense when her husband experienced a violent psychiatric episode, the defendant moved to compel production of his medical records, including records arising from "psychiatric treatment over the years for a multiple personality disorder."[4] Id . Her husband had several prior arrests for assaulting her, and, only two years earlier, had been convicted for assaulting her in Florida. Id . Further, *1209 she had been present with her husband during some of the psychiatric sessions in question. Id . at 235, 836 P.2d 445. Thus, Roper involved far more specificity concerning the existence of records and their contents than exists here.
¶ 12 In Connor , we discussed the scope and limitations of Roper . 215 Ariz. 553, ¶¶ 7-10, 161 P.3d 596. There, Connor appealed his conviction for first-degree murder, asserting that "the trial court erred by denying his pretrial motion for production of the victim's medical records." Id. ¶ 1. The victim, "an intellectually and emotionally challenged young man," had been stabbed to death. Id . ¶ 2. Connor ultimately admitted the stabbing, but claimed self-defense. Id . ¶ 3. He brought a pre-trial motion "to compel discovery of 'any and all medical treatment, counseling, psychological and/or psychiatric records' of the victim[,]" claiming that such information "may be exculpatory and will likely solidify the [d]efendant's position that the decedent was the initial aggressor." Id . ¶ 4.
¶ 13 We concluded Connor had "presented no sufficiently specific basis to require that the victim provide medical records to the trial court for an in camera review." Connor , 215 Ariz. 553, ¶ 11, 161 P.3d 596. We also noted Roper "did not authorize a wholesale production of the victim's medical records to the defendant." Id . ¶ 8. Addressing the limited scope of Roper , we wrote:
[W]e authorized some infringement, limited to the extent required by the nature of an in camera review, on both the victim's right to be free of discovery under the Victim's Bill of Rights and the victim's physician-patient privilege in any documents in which that right had not been waived. Nevertheless, we did so in the context of a reasonable possibility that the information sought by the defendant included information to which she was entitled as a matter of due process, and to which her victim husband had arguably waived his physician-patient privilege as to her by including her in some of his treatment sessions. We, thus, merely recognized the possibility that due process could override other rights, that some privilege might have been waived, and then authorized the trial court to weigh these competing rights after considering the evidence and the defendant's need for it in presenting her defense.
Id. ¶ 10 (citation omitted); see also Sarullo , 219 Ariz. 431, ¶¶ 19-20, 199 P.3d 686 (defendant seeking "information relating to [victim's] 'inability to carry on healthy productive relationships,' any changes in her prescription medication around the time of the incident, and her discussions of the incident with her counselor" failed to present "sufficiently specific basis for requiring" production of medical records).
¶ 14 We are unpersuaded by our dissenting colleague's suggestion that the intrusiveness of Kellywood's request is acceptable because he only seeks in camera review by a trial judge required to maintain the confidentiality of A.K.'s records. Notably, both Connor , 215 Ariz. 553, ¶ 11, 161 P.3d 596, and Sarullo , 219 Ariz. 431, ¶¶ 20-21, 199 P.3d 686, resulted in conclusions that the defendants had made showings insufficient to require production for in camera review. Thus, the fact Kellywood seeks in camera review is not distinguishing. Further, consistent with Connor and Sarullo , we conclude that even disclosure for in camera review by a trial judge represents a significant intrusion into a victim's confidential records. See State v. Pinder , 678 So.2d 410, 415 (Fla. Dist. Ct. App. 1996) (disclosure of sexual assault counseling records for in camera review by trial judge intrudes on victim's rights).[5]
¶ 15 Accordingly, we conclude the trial court did not abuse its discretion by refusing Kellywood's motion to compel production of A.K.'s medical and counseling records for in camera review.
*1210 Withdrawn Motion to Compel
¶ 16 Kellywood also argues on appeal that he was entitled to A.K.'s DCS records, school records, search history, Facebook entries, and text messages. He argues this information "would have addressed issues with A.K.'s credibility as an accuser." Kellywood, however, withdrew the motion requesting that information. Thus, we review only for fundamental, prejudicial error. See State v. Henderson , 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601 (2005) (quoting State v. Hunter , 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) ) (fundamental error is "error going to the foundation of the case ... that takes from the defendant a right essential to his defense, and ... of such magnitude that [he] could not possibly have received a fair trial"); see also State v. Escalante , 245 Ariz. 135, ¶ 16, 425 P.3d 1078 (2018) ("[T]he appropriate standard for fundamental error under Henderson is disjunctive."). With respect to all but A.K.'s DCS records, the court was under no obligation to order the state to acquire, produce, or create records that were not in its possession or control-particularly in the absence of a pending motion. See Ariz. R. Crim. P. 15.1(b) ; State v. Rienhardt , 190 Ariz. 579, 585-86, 951 P.2d 454, 460-61 (1997). Accordingly, we find no error concerning this request. See Henderson , 210 Ariz. 561, ¶ 19, 115 P.3d 601.
¶ 17 Further, assuming without deciding that the DCS records were in the possession or control of a state agency, they would have been subject to disclosure only insofar as Rule 15.1(b) required it-whether because they contained exculpatory information or otherwise. Nothing in this case indicates the DCS records, which pertain to the child welfare proceedings that resulted in A.K.'s placement in Kellywood's home, and which did not arise from the allegations against him, contained any material, exculpatory information whatsoever. See Brady , 373 U.S. at 87, 83 S.Ct. 1194. Because there is no basis to conclude that the state failed to comply with its obligations under Brady or Rule 15.1(b), we cannot say error, fundamental or otherwise, exists. See Henderson , 210 Ariz. 561, ¶ 19, 115 P.3d 601.
Disposition
¶ 18 For the foregoing reasons, we affirm Kellywood's convictions and sentences.

The state argues Kellywood erroneously sought production from the state instead of directly from A.K. Under Rule 15.1(b) and (b)(8), Ariz. R. Crim. P., the state must "make available to the defendant ... all existing material or information [in the state's possession or control] that tends to mitigate or negate the defendant's guilt." See also Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (state suppression of exculpatory evidence violates due process). But this duty extends to material and information "in the possession or control of ... the prosecutor" as well as "any law enforcement agency that has participated in the investigation of the case and is under the prosecutor's direction or control." Ariz. R. Crim. P. 15.1(f)(1), (2). Here, we assume without deciding that the documents in question were not in the possession or control of the state, but we nonetheless elect to address whether Kellywood was entitled to receive the records from A.K. See Adams v. Valley Nat'l Bank of Ariz. , 139 Ariz. 340, 342, 678 P.2d 525, 527 (App. 1984) (general preference for resolving cases on merits).

The jury acquitted Kellywood of one count of sexual conduct with a minor under the age of fifteen.

Kellywood makes sweeping, unsupported assertions concerning children who have been in foster care and involved in parental termination proceedings, including: "Such an experience is not without trauma to the children, and more often than not, children such as A.K. experience behavioral issues which can include lying or manipulative behavior designed to gain attention." We are unpersuaded by the stereotyping of children who have been involved in child welfare proceedings.

"The defendant, not the victim, [had] made the '911' call to the police at the time of the alleged incident, asking for help ... because her husband was beating her and threatening her with a knife." Roper , 172 Ariz. at 237, 836 P.2d 445.

Our colleague also emphasizes that five of the six counts on which Kellywood was convicted "were supported by no direct evidence other than A.K.'s testimony." But some elaboration is warranted. The sixth count (actually Count Four) arose from Kellywood having sexual intercourse with A.K. on the carpet in a vacant home where Kellywood had been doing remodeling work. Police later obtained a DNA match to Kellywood from a semen stain on the carpet, as well as a biological sample consistent with A.K.'s DNA.