IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

VICTOR A. ARIAS GOMEZ,
*Appellant*.

No. 2 CA-CR 2024-0061
Filed December 18, 2025

---

Appeal from the Superior Court in Pima County
No. CR20224180001
The Honorable Casey F. McGinley, Judge

**AFFIRMED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Amy M. Thorson, Assistant Attorney General, Tucson
*Counsel for Appellee*

Law Office of Hernandez Hamilton Lamoureux PC, Tucson
By Carol Lamoureux and Joshua F. Hamilton
*Counsel for Appellant*

**OPINION**

Chief Judge Staring authored the opinion of the Court, in which Presiding Judge Brearcliffe concurred and Judge Eckerstrom concurred in part and dissented in part.

S T A R I N G, Chief Judge:

**¶1**        Victor Arias appeals from his convictions and sentences for sexual conduct with a minor.  For the following reasons, we affirm.

**Factual and Procedural Background**

**¶2**        In 2012, when A.F. was seven years old, Arias began dating her mother.  Soon afterward, the couple moved in together, and A.F. was left in her maternal grandmother's care.  On occasion, A.F. would spend the night or weekend at her mother's and Arias's house, but she continued to reside primarily with her grandmother.  After breaking up with Arias in 2015, A.F.'s mother moved back in with A.F. and the grandmother.

**¶3**        In 2019, when A.F. was approximately thirteen years old, she observed her mother speaking to Arias and expressed fear that they would get back together.  A.F. told her grandmother that Arias had "sexually abused" her when she was younger.  The grandmother relayed this information to A.F.'s mother, who took A.F. to a police station to make a report.

**¶4**        Initially, A.F. disclosed only one instance of sexual misconduct by Arias.  But at her forensic interview, she revealed that two instances of such misconduct had occurred on the same day.  Arias was arrested and charged with one count of public sexual indecency and two counts of sexual conduct with a minor under fifteen.

**¶5**        In May 2022, after reviewing her forensic interview video and transcripts, A.F. told prosecutors that she thought she should say more "just to get it off [her] chest."  She was taken to a children's advocacy center for a second forensic interview, during which she gave detailed accounts of several more instances of sexual misconduct by Arias between 2012 and 2015.

¶6 Arias was indicted on the new allegations in October 2022. He was ultimately charged with two counts each of sexual conduct with a minor under fifteen and attempted molestation of a child, and one count each of molestation of a child, sexual abuse of a minor, and public sexual indecency to a minor.[1]

¶7 At the conclusion of an eight-day trial, the jury found Arias guilty of the two counts of sexual conduct with a minor, further finding that the victim was twelve years old or younger at the time of each offense. Because the jury could not reach unanimous verdicts on the remaining five counts, the trial court declared a mistrial as to those charges, which were later dismissed without prejudice. Arias's motions for an acquittal and for a new trial were denied. The court sentenced him to two consecutive sentences of life in prison without the possibility of release for thirty-five years. This appeal followed. We have jurisdiction under article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

**Discussion**

I. **In-Camera Review of Medical Records**

¶8 On appeal, Arias argues the trial court erred in refusing his request to conduct an in-camera inspection of A.F.'s mental health records. Arias claims the court "erroneously read the caselaw"—specifically, *R.S. v. Thompson*, 251 Ariz. 111 (2021), and *State v. Mandell*, 253 Ariz. 97 (App. 2022)—as requiring a defendant to have identified the specific healthcare provider, date, and information likely contained in the records at the time the court rejected his request. Arias contends he could not have made the request with that level of specificity because he had no way of learning such information on his own, whereas the state and victim knew the specifics of her care and could have provided that information. Arias also asserts that the information he sought was material to his defense "because it pertained to the credibility of the sole witness against him" and "targeted information that was directly relevant and potentially material to the central issue in the case." Thus, Arias argues, the denial of his request warrants "[r]eversal of [his] convictions and a new trial."

---

[1]On the state's motion, the three original charges from 2019 were dismissed after being incorporated into the new indictment.

¶9 We review a lower court's ruling on a criminal defendant's request for medical records for an abuse of discretion. *State v. Connor*, 215 Ariz. 553, ¶ 6 (App. 2007). However, to the extent Arias makes a constitutional claim in asserting the information is necessary to his defense, we review de novo. *Id.*

¶10 Prior to trial, Arias requested the disclosure of any records relating to the mental healthcare treatment of A.F. He argued such disclosure was necessary because A.F. had raised new allegations of sexual misconduct after participating in multiple meetings with prosecutors over a thirty-month period. If there had been "no mention" during any treatment sessions about the additional alleged misconduct, Arias asserted, such absence would be exculpatory and necessary for an effective cross-examination of both A.F. and the state's expert witness. Alternatively, if the trial court "did not want to order direct disclosure," Arias requested that the court instead conduct an in-camera review of the records. The court denied both requests and, with regard to in-camera review, found that "pursuant to Arizona law," in-camera disclosure was not appropriate unless the request contained "some specificity," which Arias had failed to provide.

¶11 In January 2024, Arias again sought court-ordered disclosure of "any notes, memoranda, and/or any and all recordation of any and all psychiatric and/or psychological treatment and/or counseling sessions" of A.F.[2] At a subsequent hearing on the motion, the trial court noted that it had already ruled on the issue and was "inclined to reaffirm [its previous] order." However, it gave Arias an opportunity to "change [the court's] mind." Arias conceded that the substance of the motion had been previously addressed but claimed that his request had been "improvidently denied." He argued that A.F.'s numerous and lengthy meetings with the prosecution were "indicative of therapy sessions." The court denied Arias's request for any of A.F.'s mental health records outside the state's

---

[2]Arias also requested and was denied "any and all notes of meetings held between the victim's advocate, prosecutor, paralegal or any representative of the prosecutor's office and the victim or her family," as well as all records between the Tucson Police Department and the victim and her family. However, Arias does not raise a claim regarding these records on appeal, and any such claim is thus waived. *See State v. Bolton*, 182 Ariz. 290, 298 (1995) (insufficient argument waives claim on review).

possession, finding it had no reason to reconsider its previous ruling and noting it was "not even sure that [such records] exist[]."

¶12        Under the Arizona Constitution, a victim generally has a right to refuse a defendant's discovery requests involving her medical records. *See* Ariz. Const. art. II, § 2.1(A)(5).  However, that right is not absolute, "and in some cases a victim may be required to produce . . . her medical records for an *in camera* inspection by the trial court." *State v. Sarullo*, 219 Ariz. 431, ¶ 20 (App. 2008).  In seeking the court's review of such records, the defendant must show a "reasonable possibility that the information sought" includes information to which he is entitled as a matter of due process. *Connor*, 215 Ariz. 553, ¶ 10.  The request cannot be based on mere conclusion or speculation. *State v. Kellywood*, 246 Ariz. 45, ¶ 10 (App. 2018) (requiring more than mere showing that there may be "something in records somewhere").

¶13        Arias asserts a general conclusion that exculpatory evidence may exist in A.F.'s counseling records, arguing that such records could demonstrate that the later-disclosed allegations were false, exaggerated, or tainted by improper suggestion by the state.  However, Arias fails either to offer any direct evidence that A.F. saw any mental health provider or to identify any possible medical providers she may have seen.  While we recognize that a defendant need not provide exacting specificity, Arias's request lacked any specific information sufficient to establish a "reasonable possibility" that the information sought would be revealed through in-camera review. *See Kellywood*, 246 Ariz. 45, ¶ 10.  As such, the request was more akin to a fishing expedition than a narrowly tailored request for specific records. *See R.S.*, 251 Ariz. 111, ¶ 30 (defendant's request "must include a sufficiently specific basis to deter fishing expeditions").  On this record, we find no abuse of discretion in the trial court's denial of Arias's request. *See id.*; *see also State v. Carlson*, 237 Ariz. 381, ¶ 7 (2015) (appellate court will uphold trial court's ruling if result was legally correct for any reason).  Indeed, were we to conclude that Arias "had demonstrated a 'reasonable possibility' on the basis of such speculation, the effect would be to compel production of medical and counseling records in virtually any case in which a defendant accused of sexual offenses claims fabrication; the exception would swallow § 2.1(A)(5) of the Victims' Bill of Rights." *Kellywood*, 246 Ariz. 45, ¶ 10.

¶14        Our dissenting colleague appears to consider our supreme court's 2021 opinion in *R.S.*, 251 Ariz. 111, as reflective of a significant change in the interpretation of the "reasonable possibility" standard,

supporting, at the very least, an in-camera inspection of A.F.'s records. In *R.S.*, the defendant was charged with murdering his girlfriend during a domestic dispute. *Id.* ¶ 2. He raised a justification defense, providing specific information that the victim had previously been "admitted to a mental hospital" following a domestic dispute in which she had assaulted him. *Id.* ¶¶ 2-3. Our supreme court concluded the trial court had not abused its discretion by ordering an in-camera inspection of the victim's records, noting the defendant had "identified the relevant documents, the entity that possess[ed] them, the specific date of the documents, and the information likely to exist in them." *Id.* ¶ 36. These were "sufficient, document-specific facts that establish[ed] a reasonable possibility the requested information [was] material to [the defendant's] justification defense." *Id.*

¶15      *R.S.* does not reflect a relaxation of the "reasonable possibility" standard. Indeed, it reinforces that a "defendant's request must be based on more than mere speculation and must include a sufficiently specific basis to deter fishing expeditions, prevent a wholesale production of the victim's medical records, and adequately protect the parties' competing interests." *Id.* ¶ 30. Here, Arias sought "any notes, memoranda, and/or any and all recordation of any and all psychiatric and/or psychological treatment and/or counseling sessions of the prosecution's witness identified in the indictment as A.F." This is precisely the sort of non-specific request rejected in *R.S. See id.*; *see also Kellywood*, 246 Ariz. 45, ¶¶ 3, 15 (affirming trial court's denial of defendant's motion to compel where defendant sought all "medical and counseling records for the period of time that [the victim] lived in his home"); *Sarullo*, 219 Ariz. 431, ¶ 19 (finding no error in trial court's denial of motion to compel when defendant sought victim's "medical/counseling records" for "years surrounding the incident" in order to find evidence concerning victim's "inability to carry on healthy productive relationships," prescription medications, and discussions with counselor). The trial court did not err in denying Arias's broad request.

## II. Prosecutor Disqualification

¶16      Arias claims the prosecutor should have been disqualified from the case because either she, her paralegal, or both were present when A.F. and her mother expressed their desire to add additional information about critical events, creating a conflict of interest. Arias asserts that the prosecutor and her paralegal met with A.F. every month for over two years before A.F. asserted new instances of sexual misconduct by Arias and that

the prosecutor was present at A.F.'s second forensic interview. He contends this proximity to the new disclosures made the prosecutor a witness to key events, allowing her to examine A.F. regarding meetings and interviews in which she had participated. As such, Arias argues, the prosecutor's disqualification from the case was necessary under *Gomez v. Superior Court*, 149 Ariz. 223, 226 (1986), and Ariz. R. Sup. Ct. 42, ER 3.7.

**¶17** We review a trial court's decision whether to disqualify counsel for an abuse of discretion, *State v. Chambers*, 255 Ariz. 464, ¶ 13 (2023), but we review de novo conclusions of law, *State v. Marner*, 251 Ariz. 198, ¶ 8 (2021). "An error of law in reaching a discretionary conclusion may constitute an abuse of discretion." *Chambers*, 255 Ariz. 464, ¶ 13 (quoting *State v. Thompson*, 252 Ariz. 279, ¶ 26 (2022)).

**¶18** Prior to trial, Arias moved to disqualify the prosecutor "based on a conflict of interest" and "the potential of her being called as a witness for the defense." He argued that, given the facts and the expected contrasting testimony of two other witnesses regarding the prosecution's meetings with A.F., the prosecutor "would not only be put in the position of having to impeach her victim, but also could be required to testify herself." "The appearance of impropriety," Arias clarified, was "not that the State met with the victim," but that "the paralegal who was present for the meetings" would need to be "cross-examined by the person who [was] directing her activities in the case." Arias claimed that the least damaging alternative would be the disqualification of the prosecutor "rather than the removal of the entire office."

**¶19** At a motions hearing, the trial court denied Arias's motion to disqualify the prosecutor. It reasoned that there were two other witnesses, one for each party, available for questioning at trial regarding the meetings and additional disclosures and that Arias's request amounted to speculation as to whether the prosecutor, being a third witness, might serve as a "tie-breaker." The court further reasoned that no other evidence had been presented to support the "disqualification either of the office or of the prosecutor that's assigned to the case."

**¶20** Generally, a conflict of interest exists when an attorney cannot "consider, recommend or carry out an appropriate course of action for the client" because of the attorney's other responsibilities or interests. *State v. Jenkins*, 148 Ariz. 463, 467 (1986) (quoting Ariz. R. Sup. Ct. 42, ER 1.7 cmt. 8). Often, this occurs when a prosecutor is involved in a case after having previously represented the defendant. *See, e.g.*, *State v. Hursey*, 176 Ariz. 330, 331, 333-34 (1993). In such cases, disqualification of the prosecutor is

necessary due to his or her intimate knowledge about the defendant gained from their previous relationship. *See, e.g.*, *id.* at 333. A party may also seek to disqualify opposing counsel based upon the appearance of impropriety. *See Gomez*, 149 Ariz. at 225-26 ("appearance of impropriety" survives as part of conflict-of-interest analysis).

¶21 When considering a motion to disqualify counsel for a conflict of interest or the appearance of impropriety, a court must consider whether: (1) the motion was made for the purpose of harassing the non-moving party; (2) the moving party will be damaged if the motion is not granted; (3) there are any alternative solutions that would be less damaging under the circumstances; and (4) there is a possibility of public suspicion that would "outweigh any benefits that might accrue due to continued representation." *Id.* at 226 (quoting *Alexander v. Superior Court*, 141 Ariz. 157, 165 (1984)); *see Marner*, 251 Ariz. 198, ¶ 12 (court must at least implicitly consider *Gomez* factors). The court should also consider whether there is "any showing of prejudice" or a lack thereof. *Turbin v. Superior Court*, 165 Ariz. 195, 199 (App. 1990).

¶22 Additionally, it is generally prohibited for an attorney to act as an advocate where he or she "is likely to be a necessary witness." Ariz. R. Sup. Ct. 42, ER 3.7(a). However, witnesses are necessary only when they will offer "relevant and material" testimony that "could not be obtained from other witnesses." *Sec. Gen. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 335 (1986). One party's intention of calling opposing counsel as a witness is not, alone, sufficient basis for that counsel's disqualification. *See id.* The party seeking disqualification of an opposing attorney bears the burden of establishing that disqualification is appropriate. *See Alexander*, 141 Ariz. at 161; *State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 228 (App. 1995).

¶23 As to the first *Gomez* factor, neither party suggests that Arias brought the motion to disqualify for the purpose of harassment. However, the remaining factors weigh against disqualification. *See Chambers*, 255 Ariz. 464, ¶¶ 18, 31 (disqualification of county attorney's office not warranted despite first factor not being "at issue in this case").

¶24 Arias fails to show how he would be damaged by the denial of his motion. The trial court noted that the record supported that the prosecutor had "never met with anybody without a third party present" and that other witnesses to the meetings were available to testify for each side. Indeed, at trial, each party called its own witness to the meetings in question. Thus, the prosecutor was not a necessary witness, and Arias does

not show how her absence as a witness prejudiced his case. *See* Ariz. R. Sup. Ct. 42, ER 3.7(a); *Sec. Gen. Life Ins. Co.*, 149 Ariz. at 335.

**¶25**     Arias claims that "the prejudice that resulted from [the prosecutor] remaining on the case was significant" and that "there were no alternative solutions short of [her] disqualification." He contends that he was damaged by the prosecutor sharing "personal knowledge" about the meetings with the jury. In particular, he argues that the prosecutor used her knowledge to "correct" A.F.'s testimony during questioning, which amounted to "unsworn testimony by a material witness . . . about a central event." The record does not support this claim.

**¶26**     At trial, the prosecutor asked A.F. if she remembered whom she had told about the new allegations. A.F. responded that she "th[ought] it was Nicole," who worked in the prosecutor's office. The prosecutor then asked A.F. if she "kn[ew] who Lori [wa]s," to which A.F. responded affirmatively, indicating that Lori also worked with the prosecutor. After laying this foundation, the prosecutor asked the following question regarding A.F.'s second visit with the forensic interviewer: "Okay, and, so, after you told Nicole, maybe Lori, did you go and talk to the lady again?" As A.F. had testified that she thought she had spoken to Nicole at the prosecutor's office, and as Lori had been introduced by A.F. as someone else she knew who worked in the prosecutor's office, the challenged question did not "correct" A.F.'s testimony but merely confirmed that A.F. had spoken to someone—either "Nicole, maybe Lori"—who worked at the prosecutor's office before she visited the forensic interviewer a second time. Further, it was undisputed, and both parties knew prior to trial, that A.F. had disclosed to Lori that she wished to share new allegations.

**¶27**     Generally, we will not second-guess a trial court's determination regarding public perceptions of a fair trial. *See Marner*, 251 Ariz. 198, ¶ 17. And Arias makes no compelling argument to do so here. As mentioned above, Arias had the opportunity to question material witnesses to the meetings, there were no apparent conflicts of interest, and the prosecutor's questioning concerning her paralegal was not improper. Accordingly, we conclude that Arias's complaints amount at most to "a remote appearance of impropriety alone," which is insufficient to establish the need for disqualification. *Burch & Cracchiolo, P.A. v. Myers*, 237 Ariz. 369, ¶ 32 (App. 2015). Thus, the trial court did not abuse its discretion in denying Arias's motion. *See Alexander*, 141 Ariz. at 161; *Romley*, 184 Ariz. at 228.

## III. Prosecutorial Error

**¶28**     Arias claims the prosecutor tried "to introduce precluded, irrelevant, and prejudicial evidence," which deprived him of a fair trial. Because Arias did not object on the basis of prosecutorial error below, we review only for fundamental error. *State v. Vargas*, 251 Ariz. 157, ¶ 10 (App. 2021).

**¶29**     The first step in fundamental error review is determining whether trial error occurred. *Id.* If so, the defendant must then show "(1) the error went to the foundation of the case, (2) the error took from . . . [him] a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, ¶ 21 (2018). If a defendant shows either of the first two prongs, then he must also make a separate showing that prejudice resulted. *Id.* If the third prong has been fulfilled, the defendant "has shown both fundamental error and prejudice." *Id.* Relevant here, to prove prejudice, Arias must show that a reasonable jury "could have reached a different result." *State v. Dickinson*, 233 Ariz. 527, ¶ 13 (App. 2013) (quoting *State v. James*, 231 Ariz. 490, ¶ 15 (App. 2013)).

### A.  Precluded Character Evidence

**¶30**     Arias asserts the state violated the trial court's order precluding character evidence regarding truthfulness when it asked A.F.'s mother whether her daughter was a "truthful person." Arias contends that, despite the court sustaining his objection to the question, the prosecutor's prohibited question was "highly prejudicial," as it "went to the central issue at trial."

**¶31**     During its direct examination of A.F.'s mother, the state asked whether she thought her daughter was "a truthful person," in violation of the trial court's earlier ruling on a motion in limine and its previous warnings that such character evidence was prohibited. Arias immediately objected, and the court sustained the objection. A.F.'s mother did not answer. Thus, while prosecutorial error occurred in the asking of the question, the court and witness responded appropriately, and Arias was not prejudiced. *See State v. Sullivan*, 130 Ariz. 213, 218 (1981) (error non-prejudicial where court sustained defense objection and question was not answered); *see also State v. Velazquez*, 216 Ariz. 300, ¶ 53 (2007) (no reversible error where jurors promptly instructed to disregard statement after objection). Accordingly, we find no fundamental error. *See Vargas*, 251 Ariz. 157, ¶ 10.

### B. Improper Vouching

¶32　　　Arias contends that, during closing arguments, the prosecutor made "several comments" that improperly vouched for and "essentially testified" to events to which she had not been a percipient witness.  In particular, he claims the prosecutor's statements that "[w]e are not talking to [A.F.] every month about what happened to her" and "[w]e are not going over the facts over and over and over again" improperly conveyed the prosecutor's personal knowledge of the case to the jury.  Arias also points to the prosecutor's remarks that she "wasn't even there when [A.F.] told [her paralegal] what [had] happened" and had "some thoughts" and "disagree[d]" with defense counsel as further examples of improper commenting.

¶33　　　"Prosecutorial vouching takes two forms: '(1) where the prosecutor places the prestige of the government behind its [evidence] [and] (2) where the prosecutor suggests that information not presented to the jury supports the [evidence].'"  *State v. Newell*, 212 Ariz. 389, ¶ 62 (2006) (alterations in *Newell*) (quoting *State v. Vincent*, 159 Ariz. 418, 423 (1989)).  The first form of vouching occurs when a prosecutor makes an assurance regarding a witness's veracity.  *State v. Acuna Valenzuela*, 245 Ariz. 197, ¶ 75 (2018).  The second occurs when a witness's credibility is bolstered by the prosecutor's reference to matters outside the record.  *Id.*

¶34　　　Neither form of vouching occurred here.  The prosecutor did not introduce or allude to any new information that had not already been introduced through witnesses, including the content of A.F.'s monthly meetings and the fact that the prosecutor was not present when A.F. first disclosed that she wished to report more allegations of sexual misconduct.  Further, the prosecutor's comments that she "disagree[d]" with defense counsel and had "some thoughts" are too vague and speculative to reasonably be considered any form of vouching.  *See Dickinson*, 233 Ariz. 527, ¶ 13 (defendant may not rely upon speculation to establish prejudice); *see also State v. Moody*, 208 Ariz. 424, ¶ 180 (2004) (counsel given wide latitude to comment on evidence and argue reasonable inferences in closing argument).  Thus, we find no error, fundamental or otherwise.  *See Vargas*, 251 Ariz. 157, ¶ 10.

### C. Burden Shifting

¶35　　　Arias asserts that the prosecutor "unfairly cast aspersions on defense counsel's integrity and made an argument that improperly and unfairly shifted the burden of proof to the defense."  He claims the

prosecutor "made several references to defense counsel" that were "aimed at attacking her integrity." For instance, Arias contends that, while discussing the reasonable doubt standard, the prosecutor "unfairly and inaccurately implied" that the defense had raised nothing more than suggestions of doubt, and "belittl[ed]" the evidence presented.

¶36        These claims relate to the following statements from the prosecution's closing argument:

> Proof beyond a reasonable doubt is proof by the evidence that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty. In criminal cases, the law does not require proof that overcomes every doubt. If, . . . based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, then you must give him the benefit of the doubt. A real possibility. A reasonable doubt. Not any doubt. Not any suggestions that defense counsel has given to you. It has to be a real possibility. A reasonable doubt.

Arias claims these statements were "highly prejudicial given the evidence and issues in this case."

¶37        In a criminal trial, the state is required "to prove every element of a charged crime beyond a reasonable doubt." *State v. Johnson*, 247 Ariz. 166, ¶ 149 (2019). This burden is improperly shifted if the state "implies a duty upon the defendant to prove his innocence or the negation of an element" of a charge, and the state errs when "it comments upon the failure of a defendant to testify or present a defense." *Id.*

¶38        Even assuming the prosecutor's words could be interpreted as "belittling" the evidence the defense had presented, the prosecutor's statement did not negate or misrepresent any element of the charges or mention any failure of Arias to testify or otherwise present his defense. *See id.* Prosecutors may appropriately contend that defense counsel's assertions of reasonable doubt are insufficient to justify an acquittal. Indeed, that is the primary purpose of a prosecutor's rebuttal argument.

For this reason, we decline to characterize a prosecutor's challenge to the strength of the defendant's case as impugning the integrity of defense counsel. Here, the prosecutor's rebuttal also emphasized the correct burden of proof for the state. As such, the challenged statements did not amount to burden shifting.

## D. Mischaracterization of Expert Testimony

**¶39** Arias argues the prosecutor's closing argument "completely mischaracterize[d]" a defense expert's testimony and scholarly research, falsely implying that "the purpose of [the expert's] testimony [was] to suggest that anytime someone discloses abuse it is false." This commentary, Arias contends, was highly prejudicial.

**¶40** At trial, the defense's expert witness, Dr. Kamala London, testified that she was "not a clinician" but "a researcher" who specializes in children's memory. The defense asked if she had served as "an expert witness before on child suggestibility," namely "[m]emory manipulation," and London confirmed that she had. Defense counsel then asked questions regarding London's studies and how she would "evaluat[e] the reliability" of a child's reporting during a forensic interview. In her answer, London detailed her work in examining "false memories" and her research and studies in "memory implantation."

**¶41** Arias takes issue with the prosecution's statements in closing that "the entire purpose" of London's work was "to create false memory" and that "[i]t can't be that every time someone discloses something that it's false." While these statements may have oversimplified the totality of London's work, there was no impermissible characterization because London had testified at length regarding her work in false-memory creation. *See Moody*, 208 Ariz. 424, ¶ 180 (prosecutor enjoys wide latitude to comment on evidence and make reasonable inferences in closing argument).

**¶42** Moreover, the prosecutor also stated in closing that the research performed by London was "neither . . . better or worse" than the clinical work of the prosecution's expert witness and that, in general, the two experts had "agreed on pretty much everything." Additionally, the prosecutor told the jury that they could "accept both of what [the experts] taught [them]" based on how congruent their testimony was on the subject of children's memory. *See In re Zawada*, 208 Ariz. 232, ¶ 14 (2004) (prosecutor entitled to opinions of persuasiveness and validity as long as not attacking expert witness with non-evidence, irrelevant or insulting

examination, ridicule, or baseless arguments). Thus, we find no error in the challenged statements. *See Vargas*, 251 Ariz. 157, ¶ 10.

## E. Cumulative Prosecutorial Error

**¶43** Arias argues that these errors, cumulatively, amounted to "fundamental error that deprived [him] of a fair trial" because they all went to the central issue of the case: A.F.'s credibility. Because we have found only one instance of prosecutorial error, we need not address this argument. *See Thompson*, 252 Ariz. 279, ¶¶ 81, 85 (no need to address cumulative error when only one instance of prosecutorial error occurred).

## IV. Preclusion of Evidence

**¶44** Arias contends the trial court erred in refusing to allow him to introduce portions of his statement to police in which he denied A.F.'s allegations. He asserts the state opened the door to his use of the statement both when it asked a detective why he had read Arias his *Miranda*[3] rights and when it elicited testimony that Arias had spoken negatively regarding A.F.'s mother and their relationship. Arias claims that the detective's testimony regarding the *Miranda* warnings directly alluded to the criminal allegations against Arias, which opened the door to Arias's denials of wrongdoing as to those allegations. Likewise, Arias claims that the state's introduction of his statement to the detective regarding A.F.'s mother was an attempt to circumvent one of the court's evidentiary rulings—specifically that introducing evidence of his theory that the mother was behind A.F.'s allegations would open the door to Arias's denials. Thus, he asserts, "editing out" his denials from his statement to the detective created an "out-of-context, misleading portrayal of his statement." Arias contends the court's preclusion of his denials constituted a violation of the rule of completeness, which "was not harmless and deprived him of a fair trial." "We review a trial court's rulings on the admissibility of evidence for an abuse of discretion." *State v. Buccheri-Bianca*, 233 Ariz. 324, ¶ 7 (App. 2013).

**¶45** The rule of completeness provides that, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Ariz. R. Evid. 106. This rule ensures that "a complete understanding of the total tenor and effect" of the statement is preserved on the record. *State v. Steinle*, 239 Ariz.

---

[3]*See Miranda v. Arizona*, 384 U.S. 436, 467-69 (1966).

415, ¶ 10 (2016) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171 (1988)). The rule does not always require the admission of an entire statement, however. *See State v. Prasertphong*, 210 Ariz. 496, ¶¶ 15, 18 (2005). "Instead, it requires the admission of those portions . . . that are 'necessary to qualify, explain or place into context the portion already introduced.'" *Id.* ¶ 15 (quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)). In essence, the trial court must admit enough of a statement as is necessary to prevent the jury from being misled. *See id.* ¶ 16.

**¶46** Here, there was no violation of the rule of completeness. Arias's denial of the allegations was not needed to qualify, explain, or place into context the detective having read Arias his *Miranda* rights prior to questioning him about the allegations. *See id.* ¶ 15. Nor was Arias's denial of the allegations necessary to place into context the detective's questioning regarding Arias's relationship with A.F.'s mother. *See id.* Further, there is no indication that the jury was or could have been misled by the omission of Arias's denials to the detective, as there was nothing to infer from the detective's statements that Arias had either admitted or failed to deny the allegations. *See id.* ¶ 16. Moreover, Arias took the stand immediately following the detective's testimony and thoroughly denied each of A.F.'s allegations. On this record, we find no abuse of discretion.

## V. Expert Testimony

**¶47** Arias argues the trial court erred in admitting testimony by the state's expert witness and in precluding evidence pertaining to a scientific study regarding the accuracy rates of adults in determining whether children are telling the truth. We review a trial court's admission of evidence for abuse of discretion and will not disturb the court's ruling absent an abuse of that discretion. *See State v. Davolt*, 207 Ariz. 191, ¶¶ 60, 69 (2004).

### A. Testimony on False Allegations

**¶48** Arias asserts that the trial court erred in denying his motion to preclude testimony from the state's expert witness, Dr. Wendy Dutton. He contends, as he did below, that Dutton's testimony was "unreliable, unhelpful to the jury, and fail[ed] to meet the requirements" of Rules 401, 402, 403, and 702, Ariz. R. Evid. Additionally, Arias claims that Dutton's testimony about the rarity of false allegations was "particularly prejudicial and improper." He argues that because A.F. "did not squarely fall into one of [the] categories" of victims of sexual misconduct that Dutton testified are typical for producing false allegations—"something that the State

highlighted during closings"—her testimony had the effect of conveying that A.F. must be telling the truth and thus constituted "vouching."

¶49        Prior to trial, Arias moved to exclude Dutton as an expert witness, claiming that her testimony did not apply to the facts of the case, lacked "probative value," was "not relevant," and was "unduly prejudicial."  The trial court denied Arias's motion, finding that "it has been settled in Arizona" that Dutton is a known expert "on the general characteristics of child sexual abuse victims" who has testified at "numerous trials" on the subject.  Further, it concluded that Dutton was an appropriate cold expert because she had "no knowledge about the facts of this case" and her testimony would "assist the jury as to general characteristics of child abuse victims," a subject that was "not within the common knowledge of the jury."  Arias again argued for the preclusion of Dutton's testimony at the pretrial motions hearing, but the court affirmed its previous ruling, finding no good cause to reconsider the issue.

¶50        At trial, Dutton testified on behavioral patterns and memory in child victims of sexual misconduct, as well as the forensic interview process.  Additionally, Dutton was asked, on both direct and cross-examination, about false allegations made by children.  She testified that false allegations generally tended to "fall into two categories": "erroneous reports" and "intentional or malicious false report[s]."  When asked if there was "any checklist for false allegations," Dutton testified that, despite researchers trying to develop a set of criteria to differentiate true statements from false ones, such "instruments have never been shown to reliably tell the difference between a true and false statement among children."

¶51        Rule 702 allows a witness "who is qualified as an expert" to testify if, among other things, the witness's "specialized knowledge will help the trier of fact to understand the evidence" or "determine a fact in issue."  The trial court serves as gatekeeper in evaluating an expert's opinion "with the aim of ensuring such testimony is reliable and helpful to the jury."  *State v. Romero*, 239 Ariz. 6, ¶ 12 (2016).  A court may find the expert's testimony, if relevant, admissible as long as the probative value of the testimony is not "substantially outweighed by a danger of . . . unfair prejudice."  Ariz. R. Evid. 403.  Expert witnesses may speak to general behavioral characteristics that affect credibility or accuracy, as long as they do not "give their opinion of the accuracy, reliability or credibility of a particular witness" or that of "witnesses of the type under consideration." *State v. Lindsey*, 149 Ariz. 472, 473, 475 (1986).

¶52        Here, the trial court acknowledged Dutton as an expert with specialized knowledge not commonly known to the jury that would be helpful in understanding the behaviors of child abuse victims. *See* Ariz. R. Evid. 702. Dutton's testimony remained on the topic of general behaviors of child sex abuse victims and did not include any details from the case. *See Lindsey*, 149 Ariz. at 475. And, contrary to Arias's assertion that Dutton's testimony inferred that A.F. was a credible witness, Dutton testified that there was no scientific way of knowing whether a victim was telling the truth or lying and that there were "outliers" to the general behaviors she described. Thus, the court did not abuse its discretion in denying Arias's motion to preclude Dutton's testimony. *See Davolt*, 207 Ariz. 191, ¶¶ 60, 69.

## B. Preclusion of the "50% Study"

¶53        Arias argues the trial court erred in precluding the use of a scientific study to which he claims the state "opened the door" when it elicited testimony regarding children making false reports during its examination of Dutton. He concedes that "it was not an abuse of discretion to preclude any discussion about specific percentages" but instead argues that it was error "to prohibit Arias from asking his expert about whether adults are able to accurately determine when children are lying." Arias asserts that the study was necessary to "counter the testimony of Dr. Dutton regarding the behavior" of child sex abuse victims, and that by precluding any testimony of the study, "the trial court unfairly deprived Arias of his ability to put on a complete defense."

¶54        At the pretrial motions hearing, the trial court precluded the mention of all evidence relating to the truthfulness of a witness, "specifically the listed victim," concluding such evidence was not relevant. This included any related statistical information involving "percentages."

¶55        On the third day of trial, out of the jury's presence, the state raised its "disagreement" regarding the use of a "50 percent" study concluding that only half of adults could correctly perceive whether a child was lying or telling the truth. The state argued that it was improper to ask either expert witness about the study because it would equate to "telling the jury that it's possible that half of them are going to get it wrong" and thus informing them on "how to decide the case." Arias argued for the use of the study, and asked, if the trial court did not want any mention of statistics, that the study instead be admitted as a basis for discussing the general difficulty adults have in determining the truthfulness of children.

**¶56** After considering both arguments, the trial court concluded there was a substantial difference between Dutton's testimony on the behavior of children who report sexual misconduct and the subject of the study: whether adults could tell if a child was telling the truth. Further, the court reasoned that, because the jury would be determining the credibility of a child victim, the study would act as "a comment or a warning" to the jury that "there is a 50/50 chance they're going to get it wrong." On these grounds, the court precluded Arias's use of the study.

**¶57** A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or misleading the jury. Ariz. R. Evid. 403. Here, the trial court concluded there was a significant risk that the evidence would mislead or confuse the jury, which constituted sufficient grounds for preclusion of the study pursuant to Rule 403. And while Dutton testified about situations in which a child might make a false report, we agree that Dutton's testimony differed substantially from the subject of the "50 percent" study, such that her testimony did not open the door for the study's introduction. *See Lindsey*, 149 Ariz. at 477 ("admission of improper evidence" by opposing party required to open the door to subject). Accordingly, we find no abuse of discretion.

## Disposition

**¶58** For the foregoing reasons, we affirm Arias's convictions and sentences.

E C K E R S T R O M, Judge, concurring in part and dissenting in part:

**¶59** When criminal defendants seek disclosure of privileged information in the possession of victims, our courts encounter weighty competing interests. In tension with the victim's constitutionally and statutorily protected interest in the privacy of such information stands the defendant's right to "a meaningful opportunity to present a complete defense." *R.S.*, 251 Ariz. 111, ¶ 13 (citing jurisprudence articulating constitutional underpinnings of the right in Sixth and Fourteenth Amendments to United States Constitution). As our supreme court has held in this context, a criminal trial is rendered fundamentally unfair "if a defendant is prevented access at the pretrial discovery stage to the 'raw materials' necessary to build his defense." *Id.* ¶ 16.

**¶60** That tension is especially pronounced in the present case. Arias faced, and ultimately received, mandatory consecutive life terms of

imprisonment for charges that turned exclusively on the accuracy and credibility of the victim's testimony against him. Under such circumstances, Arias's due process interest in pursuing plausible sources of impeachment material was acute. The most promising of those sources were A.F.'s counseling records: records of therapy sessions A.F. purportedly underwent to aid her in processing Arias's victimization of her. A.F. possessed, at minimum, an equally acute therapeutic interest in maintaining the privacy of those records from the scrutiny of her alleged abuser.

¶61 To strike a balance between such competing interests, our supreme court has held that privileged mental health records may be produced "if the defendant shows a reasonable possibility that the information sought includes evidence that would be material to the defense or necessary to cross-examine a witness." *Id.* ¶ 1. In the interests of protecting a victim's privacy, that showing triggers not disclosure to the defendant, but rather an inspection by the trial judge—a professional with the ethical duty to protect the confidentiality of those materials to the extent not exculpatory to the defendant. *See* Ariz. R. Sup. Ct. 81, R 3.5 ("A judge shall not intentionally disclose . . . nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties.").

¶62 I write separately because I conclude that Arias provided a concrete, non-speculative basis to establish the reasonable possibility that A.F.'s counseling records would contain information material to presenting his defense. In particular, Arias provided the trial court reliable information, conveyed by A.F.'s grandmother, that A.F. had attended counseling sessions following her initial disclosure in 2019, "regarding [those] initial allegations."[4] During that timeframe, A.F. repeatedly maintained, both to law enforcement and her family, that Arias's sex crimes against her had occurred on a single day in 2012. In May of 2022, however, she reported for the first time that Arias had also periodically sexually mistreated her after 2012, through 2015.

---

[4]The majority questions whether the grandmother's statement to defense counsel is a reliable source of information about A.F.'s counseling sessions. But, the state trusted the grandmother's knowledge sufficiently to call her as the first witness at trial. The state elicited that A.F. had lived with the grandmother during most of her childhood and was primarily raised by the grandmother. The grandmother also testified that A.F. called her "mom."

¶63  After the state reindicted to add charges based on A.F.'s additional recollections, Arias asserted that records of counseling sessions from the time period while A.F. was maintaining that the sexual misconduct had been confined to one day might reasonably provide material, exculpatory evidence to counter her later claims regarding the additional charged offenses.  To the extent those records exclusively mention the 2012 events—a reasonable assumption given that A.F. had yet to make a report regarding any other instances of misconduct by Arias— they would constitute evidence of A.F.'s prior actions inconsistent with her later claims that Arias had committed additional crimes against her after 2012.[5]  In short, Arias articulated a specific, non-speculative basis to establish a reasonable possibility that the records of A.F.'s counseling sessions from 2019 until her report of additional misconduct in May 2022 would reveal information "material to the defense or necessary to cross-examine a witness."  *R.S.*, 251 Ariz. 111, ¶ 1.

¶64  In nonetheless rejecting Arias's motion, the trial court found that it lacked adequate "specificity."  The court elaborated that Arias had failed, *inter alia*, to provide the name of the counseling service, its location, the specific date of any counseling sessions, or the specific documents generated on those dates.

¶65  In my view, our controlling jurisprudence does not demand that level of specificity in order to demonstrate a "reasonable possibility" that the disclosure sought might lead to material, exculpatory evidence. *Id.* ¶ 30. Rather, our supreme court has only required a "sufficiently specific

---

[5]Conversely, if those records demonstrate that A.F. discussed the additional indicted crimes with her counselor, they would remain material to Arias in formulating a challenge to the reliability of A.F.'s recollections. In his renewed motion for disclosure, Arias explained that the treatment records would provide a necessary context for the testimony of the parties' respective experts.  He asserted that those competing experts would address how repeated meetings and therapeutic modalities might, or might not, affect witness recall.  Here, when the state's case turned on the reliability and accuracy of A.F.'s testimony as to events that had occurred over a decade earlier, and when that testimony included descriptions of events not revealed until nearly three years after the original indictment, the circumstances of A.F.'s recall of both the initial and additional charged incidents were highly relevant.

basis to deter fishing expeditions." *Id.*[6] Indeed, it expressly rejected as "unworkable" a more demanding "substantial probability standard" precisely because it would have "effectively require[d] a defendant to know the contents of the requested documents as a prerequisite for in-camera review." *Id.* ¶ 26; *see also State v. Kellywood*, 246 Ariz. 45, ¶ 23 (App. 2018) (Eckerstrom, J., dissenting) ("[A]ll disclosure requests, including well-founded ones, involve some measure of speculation: without possession of the requested documents, no litigant can be certain what information they will contain."). As our supreme court thereby implied, every discovery request will lack some level of specificity because the requesting party does not have access to the information it seeks.

¶66 For these reasons, our courts should not assess the specificity of a disclosure request in the abstract. Rather, we should do so to the extent relevant to determine whether the defendant has met the applicable standard for disclosure. In *R.S.*, our supreme court articulated a useful standard for assessing whether a defendant has made an adequately specific showing: whether the defendant has provided "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal" material, exculpatory evidence. *See* 251 Ariz. 111, ¶ 25 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)) (approving of standard, applied in analogous discovery context, for evaluating propriety of in-camera inspection).

¶67 In my view, Arias has made a sufficiently specific showing to demonstrate a good-faith, non-speculative basis to believe that A.F. was undergoing counseling sessions. Further, he has articulated a non-speculative basis to believe those counseling sessions were focused on topics material to the charges. Finally, he has provided a sufficiently specific basis to believe those sessions were conducted during a time frame when resulting records would logically contain materials with a reasonable possibility of being material to the defense or necessary to cross-examine a witness.

---

[6]In assessing the request for disclosure before it in *R.S.*, the court did emphasize the specificity of the defendant's request in affirming the trial court's order directing disclosure for in-camera review. 251 Ariz. 111, ¶ 36. In so doing, it distinguished the overly vague discovery requests rejected in other cases. *Id.* But it did not suggest that every compliant discovery request need demonstrate a level of specificity identical to that shown on the facts before it. *Id.*

¶68        In reviewing the trial court's findings, I struggle to deduce how the specific name of the counseling entity, the specific dates of counseling sessions, or the specific location where they were conducted would shed any light on the likelihood that records from those counseling sessions might, or might not, produce material, exculpatory evidence. I would therefore hold that the court erred in denying Arias's request for an in-camera inspection of the records on that basis. I would remand with directions that the requested in-camera inspection be conducted. I would direct that, if that inspection reveals material, exculpatory information, the court order a new trial unless the state can demonstrate, beyond a reasonable doubt, that such information would not have affected the verdict.

¶69        I concur in all other respects with the majority's well-reasoned opinion.